THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER B. TAYLOR, Defendant-Appellant.

Fifth District   No. 5—93—0163

Opinion filed March 13, 1997.—Rehearing denied May 2, 1997.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KUEHN delivered the opinion of the court:

If we believe that confession is good for the soul, this is a case where there is too much of a good thing. The evidence against defendant includes the claim of a witness that he confessed to her. But defendant is not the only soul claimed to be in search of redemption

from this crime. At the initial stage of investigation, another witness claimed that someone else confessed to him. The first known confessor was the initial suspect in the investigation. This suspect eventually walked into a Madison County courtroom, faced the judge, and swore under oath that he was to blame.

We have been ordered to revisit an earlier ruling that awarded defendant a new trial. *People v. Taylor*, 264 Ill. App. 3d 197, 637 N.E.2d 756 (1994), *appeal denied, judgment vacated, & cause remanded*, 163 Ill. 2d 581, 655 N.E.2d 914 (1995) (supervisory order). We previously held that the original suspect's in-court confession should have been admitted into evidence at defendant's second trial as a statement against interest. The sole issue for review is whether the former in-court confession is admissible in light of *People v. Rice*, 166 Ill. 2d 35, 651 N.E.2d 1083 (1995).

On the evening of December 14, 1988, a man wearing a long tan trench coat and a floppy black and white hat entered the Alton Farm Fresh Dairy Store (Farm Fresh) and pulled a pistol. He held two employees at gunpoint and ordered the surrender of the store's cash register receipts and two packs of cigarettes. The money and cigarettes were placed in a bag and handed to the gunman. He and the bag then disappeared into the night.

The Farm Fresh robbery investigation quickly focused on Thomas Stewart. Stewart was, by reputation, a likely suspect. The investigation targeted him, however, after a close confidant, his cousin Romel Stevens, breached a trust and reported to authorities that Stewart confessed to the Farm Fresh robbery just four days after he committed it.

Stewart was a suspect in other armed robbery investigations. In fact, when detectives visited him with questions about the Farm Fresh robbery, Stewart was already in custody for a robbery of the Alton Domino's Pizza. The Domino's Pizza robbery took place a few days after the Farm Fresh robbery. Stewart told detectives that he could provide details about the Farm Fresh robbery. He offered to clear it up if the detectives could guarantee him a furlough from jail until Christmas. The detectives made no effort to secure a holiday release. Stewart, in turn, made no effort to clear up the Farm Fresh robbery.

Stewart's mugshot was planted in an array of mugshots and taken to Regina Wheeler, a Farm Fresh victim. She selected Stewart's mugshot out of the array but was tentative in her identification. She was never shown a mugshot of the defendant. Wheeler later testified that the armed robber, the mugshot she had selected, and the defendant were all the same man.

Wheeler's tentative identification of Stewart supported Romel Steven's claim that Stewart confided his guilt. Although the investigation into Stewart was meeting with success, the mugshot array viewed by Wheeler was never shown to the second Farm Fresh victim. Stewart never stood in a lineup.

The investigation took a sudden turn away from Stewart and toward defendant after Alton detectives were summoned to Delisa Saez's jail cell. Saez, like Stevens, claimed to know who committed the Farm Fresh robbery. Her report to the police unquestionably demonstrated knowledge of the crime's details.

Saez reported that she knew the defendant. He came to her home on the night of the Farm Fresh robbery. She lived just three blocks from the Farm Fresh store. The defendant came dressed in a long brown trenchcoat and a large multicolored hat. He told her that he had just robbed the Farm Fresh store and took a package of Kools, a package of Newports, and over $100 in cash. She described a gun that the defendant possessed on the night of the robbery. That description matched the description of the gun used in the Farm Fresh robbery.

Alton detectives abandoned the mugshot array taken to Wheeler and compiled a different array. The collection included defendant's mugshot but excluded Stewart's mugshot. The new array was taken to the other Farm Fresh victim, Brenda Hudson, who selected defendant's mugshot. She wanted to see him in person, however, in order to feel confident about her identification.

Both victims attended a lineup. Stewart and defendant were in custody at the Madison County jail. Although both suspects were readily available to participate in a lineup, the victims were shown a lineup array that included only the defendant. Hudson, who previously viewed and selected defendant's mugshot, positively identified defendant. Wheeler, who previously viewed and selected Stewart's mugshot, could not identify anyone. She did, however, identify defendant when she heard his voice. She was sure that the sound of defendant's voice matched that of the robber's voice.

The defendant stood trial for the Farm Fresh robbery. Both victims made positive in-court identifications of the defendant. In addition to the eyewitness testimony, the State offered the testimony of Saez, who repeated her earlier report to the police. She testified about the circumstances and details of defendant's confession. Her knowledge of the robber's clothing, the type of gun used, and the items taken in the robbery demonstrated that she knew who committed the Farm Fresh robbery. Her claim that it was the defendant bolstered the opinions of both eyewitnesses.

A possibility existed, however, that Saez learned details about the Farm Fresh robbery from someone other than the defendant. Saez's apartment was indeed convenient to the robber of the Farm Fresh store. Saez did not live there alone. She, her boyfriend, and her aged husband lived there.

Saez's boyfriend was Romel Stevens' cousin. Romel Stevens and Saez's boyfriend were arrested for armed robbery a few days after the Farm Fresh robbery. When arrested, her boyfriend was armed with a gun. The gun seized from her boyfriend was the same gun identified by the Farm Fresh victims as the gun used by the Farm Fresh robber. Saez's live-in boyfriend was Thomas Stewart.

The defense called a third eyewitness. An Alton police officer, on patrol in the area the night of the robbery, saw a man dressed in a long tan trench coat and a large floppy hat about to enter the Farm Fresh store. A few moments later, she received the Farm Fresh robbery dispatch. The officer, Jonniece Young, testified that the man she saw fitting the description of the robber could not have been the defendant. She knew the defendant and it was not him. The man she saw had skin lighter in color than her own, skin more consistent with the color of Stewart's skin than with the defendant's much darker skin.

The jury returned a guilty verdict. The defense tried to blame the crime on Stewart but made no effort to present evidence of Stewart's alleged confession to his cousin. No attempt was made to introduce the third-party confession because the defense did not know about it. The State withheld its knowledge of Stewart's confession.

Before an appeal from the first verdict was taken, defendant filed a post-trial motion. Defendant's motion asserted his innocence. The motion relied, in large part, upon the newly discovered fact that Stewart confessed to his cousin just four days after the robbery was committed. On December 4, 1989, the date set for defendant's sentencing hearing, defendant was allowed to call Stewart as a witness in advance of the date set for hearing on the post-trial motion. Stewart thus testified in support of defendant's motion for a new trial on a day primarily devoted to the imposition of sentence. The rest of the evidence on the post-trial motion was not taken until January 8, 1990, when, by stipulation of the parties, Stewart's testimony was incorporated into the post-trial motion evidence.

Stewart walked into the courtroom, took the witness stand, and insisted under oath that he committed the Farm Fresh robbery. He further claimed ownership of the gun identified in defendant's trial and asserted that it was indeed the gun he used in committing the crime.

The State cross-examined Stewart. It confronted him with a prior statement made to Alton detective Lindell Pyatt. Stewart acknowledged that when Lindell Pyatt earlier asked him about the Farm Fresh robbery, he denied any involvement. Stewart refused, however, to acknowledge that his earlier denial cast blame on defendant. The State elicited that Stewart's asserted guilt surfaced only after he incurred a draconian debt to society for his other criminal conduct. The State pointed out that Stewart had very little risk in confessing to another robbery when he already faced the measure of 60 years in prison for his wicked ways.

The trial court denied the post-trial motion, the defendant appealed, and we reversed based upon the nondisclosure of evidence favorable to the accused. *People v. Taylor*, 219 Ill. App. 3d 1114, 628 N.E.2d 1211 (1991) (unpublished order under Supreme Court Rule 23 (134 Ill. 2d R. 23)).

The defendant stood trial for the Farm Fresh robbery a second time. Both victims again made positive in-court identifications of the defendant. Saez again recalled the defendant's confession. The defense again tried to blame the crime on Stewart. This time, however, the defense was armed with knowledge of Stewart's confession to his cousin four days after the robbery and Stewart's repeated confession while testifying under oath. Neither confession was presented to the jury.

The defendant sought to call Stewart as a witness. Stewart was brought to the courthouse, but he never entered the courtroom. Stewart's lawyer appeared and announced to the court that Stewart, if called as a witness, would assert the privilege against self-incrimination. The court and the parties assented to counsel's declaration of Stewart's intent. Stewart himself did not exercise the privilege. No hearing was held to ascertain the basis for the claim.

The defendant then sought to introduce Stewart's prior self-incriminating testimony at the hearing on defendant's post-trial motion. The trial court refused to admit the former testimony. It held that Stewart's confession under oath was untrustworthy. It also held that the State was not afforded an adequate opportunity to adversarially test Stewart's credibility.

The court and both parties operated under the mistaken belief that Stewart's testimony on the day of sentencing was offered in support of sentencing issues. Stewart did testify at defendant's sentencing hearing. However, Stewart testified on an issue raised in the post-trial motion. His testimony was offered in support of a new trial. Its purpose was to convince the trial judge that Stewart committed the crime and that defendant's guilty verdict should be vacated.

The court thus misapprehended the point of Stewart's earlier testimony. Because the court believed that the testimony was offered at a sentencing hearing, the court believed that it was offered to address issues other than guilt or innocence. It reasoned from this belief that the State lacked the proper incentive to test Stewart's veracity. The court held that Stewart's testimony, when given, did not invoke the need for vigorous cross-examination directed at the truth of the matter asserted. Paradoxically, it further held that based upon matter elicited during the cross-examination, Stewart's testimony was not worthy of belief. The trial court reasoned that the admission of the prior testimony as trial evidence on the issue of guilt or innocence would allow use of untested and untrustworthy hearsay.

The fact that Stewart bared his guilt to a trusted relative who promptly betrayed his confidence was not placed into evidence. Furthermore, the jury did not hear that Stewart later shared his guilt in open court under oath subject to unconstrained inquiry. The jury returned another guilty verdict and we again reversed. *Taylor*, 264 Ill. App. 3d 197, 637 N.E.2d 756 (1994). We found that trial error pervaded the second proceeding, and we held that the cumulative effect of this error deprived the defendant of a fair trial. *Taylor*, 264 Ill. App. 3d at 211, 637 N.E.2d at 765-66.

We need not revisit each error that formed the collective basis of our earlier decision. We must, however, revisit our view of the trial court's refusal to admit Stewart's post-trial motion testimony. We previously held that Stewart's prior testimony should have been admitted in the context of an ineffective assistance of counsel claim. *Taylor*, 264 Ill. App. 3d at 208-10, 637 N.E.2d at 763-65. Our holding was predicated upon appellate court views expressed in *People v. Rice*, 247 Ill. App. 3d 415, 617 N.E.2d 360 (1993), *rev'd*, 166 Ill. 2d 35, 651 N.E.2d 1083 (1995). The Illinois Supreme Court vacated our decision and remanded this case with direction to reconsider our holding in light of its decision in *Rice*. *Taylor*, 163 Ill. 2d 581, 655 N.E.2d 914.

After reviewing the supreme court's order, we are satisfied that the facts of our case called for the admission of Stewart's prior testimony. In fact, Stewart's hearsay statements fit the criteria for reliability under both exceptions recognized and articulated in *Rice*.

Rice and his codefendant, Raymond Pugh, were arrested when a traffic stop matured into a search of Pugh's person. *Rice*, 166 Ill. 2d at 37, 651 N.E.2d at 1084. An officer saw Rice pass a brown paper bag to Pugh, who was seated in the passenger's seat. He also saw Pugh's attempt to conceal it. The officer retrieved the bag from Pugh's trousers and discovered that it contained over 100 grams of heroin. *Rice*, 166 Ill. 2d at 37-38, 651 N.E.2d at 1084.

Both men were charged with heroin possession. *Rice*, 166 Ill. 2d at 38, 651 N.E.2d at 1084. Pugh filed a motion to suppress. At a hearing on his motion, Pugh testified that he tucked the bag of heroin into his pants several hours before the traffic stop occurred. Pugh insisted that there was no transfer from Rice and therefore no need for him to take furtive action. *Rice*, 247 Ill. App. 3d at 417, 617 N.E.2d at 362. Thus, Pugh claimed that the officer could not possibly have observed the acts upon which the search was justified.

At Rice's trial, Pugh asserted the privilege against self-incrimination. *Rice*, 166 Ill. 2d at 38, 651 N.E.2d at 1084. He became unavailable as a witness to refute the arresting officer's claim that he saw Rice transfer the bag of heroin during the traffic stop. Rice wanted his codefendant's testimony to establish that the bag and its contents were concealed inside the pants hours earlier. *Rice*, 166 Ill. 2d at 38, 651 N.E.2d at 1084-85.

After Pugh's fifth amendment rights were honored, Rice sought to admit Pugh's earlier suppression hearing testimony. Rice sought to use the hearsay to negate his physical control of the contraband and cast doubt upon his knowledge of its existence. The trial court refused to admit it. *Rice*, 166 Ill. 2d at 38, 651 N.E.2d at 1085. The appellate court reversed. *Rice*, 247 Ill. App. 3d at 417-19, 617 N.E.2d at 362-64. It held that Pugh's prior testimony should have been admitted as a statement against interest. The supreme court agreed with the trial court, holding that the testimony was unreliable and failed to comport with the requirements of any exception to the rule against hearsay. *Rice*, 166 Ill. 2d at 39-45, 651 N.E.2d at 1085-88.

■ The supreme court first examined the former-testimony exception to hearsay. *Rice*, 166 Ill. 2d at 39, 651 N.E.2d at 1085. The reliability of testimony given at proceedings other than those at which it is offered as evidence rests in the opportunity to cross-examine the witness. *Rice*, 166 Ill. 2d at 39, 651 N.E.2d at 1085, citing *People v. Horton*, 65 Ill. 2d 413, 415-16, 358 N.E.2d 1121, 1123 (1976). For an opportunity to cross-examine to be considered meaningful, and therefore adequate to provide reliability, "the motive and focus of the cross-examination at the time of the initial proceeding must be the same or similar to that which guides the cross-examination during the subsequent proceeding." *Rice*, 166 Ill. 2d at 41, 651 N.E.2d at 1086.

While Rice's codefendant was open to cross-examination during the suppression hearing, the focus of the hearing was not on the defendant's guilt or innocence. Because Rice's guilt or innocence was not at issue during the suppression hearing, the State's questions to Pugh were not directed at challenging Pugh's assertions as they re-

lated to Rice. Therefore, the State was not afforded a meaningful opportunity to effectively cross-examine Pugh and render the prior testimony reliable hearsay for the purpose of admission at Rice's trial. *Rice*, 166 Ill. 2d at 41-42, 651 N.E.2d at 1086.

■ The issue of meaningful opportunity to cross-examine at a prior hearing must be decided on a case-by-case basis. *Horton*, 65 Ill. 2d at 416, 358 N.E.2d at 1123. It is a question unsuited for *per se* determination. *Rice*, 166 Ill. 2d at 39, 651 N.E.2d at 1085.

In Rice's case, the prior testimony was given at Pugh's suppression hearing. *Rice*, 166 Ill. 2d at 38, 651 N.E.2d at 1084. Pugh's testimony was self-serving, offered to prove that the officer lied about the observation of Rice's transfer of the bag of heroin. Pugh hoped to establish that the search lacked the justification claimed. The State had no reason to focus its cross-examination on Rice's guilt when it was not in issue. *Rice*, 166 Ill. 2d at 41, 651 N.E.2d at 1086. The State had no reason to question Rice's physical control of the contraband or his knowledge of its existence. Moreover, the State had no reason to challenge Pugh's motivation in giving testimony favorable to Rice when it was not offered in Rice's favor.

Under these circumstances, the former testimony constituted unreliable hearsay. *Rice*, 166 Ill. 2d at 41-42, 651 N.E.2d at 1086. It was offered to prove a fact relevant to Rice's guilt or innocence. But the fact was asserted at an earlier suppression hearing when the testimony had nothing to do with Rice's guilt or innocence. The State had no reason to probe the asserted fact in terms of the issue litigated at Rice's trial. Therefore, the State's lack of inquiry could not have been the result of adversarial choice. The testimony lacked the assurance of reliability that flows from the opportunity to conduct meaningful cross-examination.

The supreme court also found that, contrary to the appellate court's holding, Pugh's testimony was not admissible under the statement-against-interest hearsay exception. *Rice*, 247 Ill. App. 3d at 417, 617 N.E.2d at 362. The former-testimony hearsay exception was considered by the supreme court in *Rice* as a predicate to its review of the appellate court's interpretation of the statement-against-interest exception to the rule against hearsay.

Rice argued that Pugh's statement was trustworthy because it was against Pugh's penal interest, was under oath, and was subject to cross-examination. *Rice*, 166 Ill. 2d at 44, 651 N.E.2d at 1087. The supreme court discounted the notion that an oath, coupled with cross-examination, could independently provide the trustworthiness necessary for the admission of testimony as a statement against interest.

The court reiterated the fact that the cross-examination failed to

meet the criteria for reliability under the former-testimony hearsay exception. While there was cross-examination, there was no meaningful opportunity to cross-examine on the issue addressed at trial. The court further pointed out that the testimony was not a spontaneous statement, was motivated by self-interest, and was not corroborated by any other evidence in the case. *Rice*, 166 Ill. 2d at 44-45, 651 N.E.2d at 1087.

Our case presents itself in sharp contrast to the circumstances presented in *Rice*. Stewart's post-trial motion testimony was offered for no purpose other than to assist the defendant. It was offered to negate defendant's guilt when guilt or innocence was still the issue. Stewart testified to convince the trial court that he committed the Farm Fresh robbery instead of the defendant. At issue was whether the guilty verdict should be vacated and a new trial awarded because of Stewart's confession.

The focus and motive of cross-examination mirrored what it would have been had Stewart testified at the trial. The cross-examination established several reasons to discount the testimony. The State established a prior relationship between Stewart and the defendant, challenged Stewart's motive for claiming guilt, obtained acknowledgement of Stewart's earlier claim of innocence, and laid a foundation to impeach Stewart with a prior statement that defendant committed the Farm Fresh robbery. The sole purpose of cross-examination was to discredit Stewart's claim that he committed the crime.[1]

The kindred issue shared in the post-trial proceeding and the defendant's trial was the issue of guilt or innocence. Both proceedings addressed the question of the Farm Fresh robber's identity.

The parallel inquiry was not a matter of coincidence. Post-trial motion hearings are not collateral to trial proceedings but are a part of those proceedings. The defendant's request for retrial was not independent of the trial process. The trial court was called upon to reweigh the evidence adduced at the earlier trial. It was asked to reconsider the issue of guilt or innocence in light of new evidence

---

[1]The State failed to seize the rather unique opportunity to conduct an extensive inquiry into Stewart's knowledge of the crime itself. Other than his claim of the ownership of the weapon used and confirmation of its use, Stewart was not asked to detail the circumstances of his guilt. Perhaps the defendant did not ask him to recount the crime for fear that he could not. Perhaps the State did not ask him to recount the crime for fear that he could. In any event, neither party put questions to test Stewart's ability to share insights about the crime he claimed to have committed. He escaped without detailing the circumstances of his guilt.

bearing on the guilt of another. The trial court revisited the issue of guilt or innocence to determine whether justice required a new trial. It was implied as a matter of course that Stewart's testimony would be presented to a jury again if the motion for new trial was granted.

■ Stewart's testimony that he committed the crime was taken and considered by the court. It was attacked by a cross-examination focused on convincing the judge that Stewart was lying about committing the crime. While there was certainly reason to question whether the testimony was credible, it did not fail to qualify for admission into evidence at the subsequent trial. Stewart's testimony may well have been rejected by the jury. Nevertheless, the jury should have weighed its worth in connection with the other evidence in the case. The former testimony fit the criteria for reliability under the former-testimony hearsay exception. *Rice*, 166 Ill. 2d at 39, 651 N.E.2d at 1085, citing *Horton*, 65 Ill. 2d at 415-16, 358 N.E.2d at 1123. The testimony was given at a proceeding that afforded a meaningful opportunity to cross-examine Stewart on the issue of guilt or innocence. We see no hearsay reasons to preclude a jury from hearing the same testimony previously taken and considered by the trial judge. The judge used the testimony to weigh defendant's potential innocence. The jury could consider it for the same purpose.

Stewart's prior testimony also meets the criteria for admissibility under the statement-against-interest hearsay exception as enunciated by our supreme court. See, *e.g., People v. Cruz*, 162 Ill. 2d 314, 342-47, 643 N.E.2d 636, 650-52 (1994); *People v. Bowel*, 111 Ill. 2d 58, 67, 488 N.E.2d 995, 999 (1986).

The critical inquiry for the admissibility of statements against interest is whether they are made under circumstances that ensure their trustworthiness. Our supreme court has refined this question to whether the statement was made under circumstances that provide "considerable assurance" of its reliability by objective indicia of trustworthiness. *Bowel*, 111 Ill. 2d at 67, 488 N.E.2d at 999. The issue of reliability (whether we can be certain the statement was made under circumstances which fairly allow the factfinder to decide how much weight to give to the statement) must not be confused with the question of credibility (whether the statement should be believed by the factfinder).

The following circumstances surrounding Stewart's testimony provide assurance of reliability to a degree that meets the test for admissibility. Stewart *testified under oath* on December 4, 1989, that he committed the Farm Fresh robbery with the weapon identified by the victims and seized from his person in connection with another robbery. He was open to *unlimited cross-examination* to test whether

his claim of guilt was truthful. The focus and motive of the cross-examination pointedly tracked the issue of defendant's guilt or innocence and *was a meaningful* opportunity for inquiry. His in-court confession was *against his penal interest*, subjecting him to the legal penalties for armed robbery. His in-court confession was *corroborated by* evidence of an earlier avowal of guilt to a trusted relative just days after the crime occurred. The earlier confidence was a *spontaneous statement to a close acquaintance.*

The investigation into the crime yielded *objective evidence of corroboration* to circumvent the potential for a fabricated confession. Wheeler made a tentative pretrial identification of Stewart, selecting his mugshot from an array of potential suspects. The gun used in the Farm Fresh robbery belonged to Stewart, and he was armed with the weapon when he was arrested. Stewart lived only three blocks from the Farm Fresh store. His live-in paramour, Saez, knew all of the pertinent details of the crime. Furthermore, a police officer who saw a man wearing the distinctive clothing worn by the Farm Fresh robber immediately prior to the robbery remembered that the robber's skin coloration was inconsistent with defendant's skin coloration and was consistent with Stewart's skin coloration. She also knew the defendant, the claimed source of Saez's knowledge about the crime, and testified that the man in the distinctive clothing was not the defendant.

Taken as a whole, these circumstances provide considerable assurance of the reliability of Stewart's testimony. Even if it failed to qualify for admission under the former-testimony hearsay exception, the existence of ample objective indicia of trustworthiness qualified it for admission under the exception carved for statements against interest.

Although we earlier relied upon a repudiated view of the statement-against-interest hearsay exception expressed by the appellate court, we nevertheless found our way to a sound conclusion. We believe our earlier opinion finds support in the supreme court view of the hearsay exceptions implicated in our case. Once the trial court determined that Stewart was entitled to invoke the privilege against self-incrimination, Stewart's post-trial motion testimony should have been admitted.

■ We would be remiss not to discuss Stewart's role as a witness at the next trial. Our opinion of circumstances that warranted the admission of Stewart's testimony at the last trial should not be taken as a license to simply introduce earlier hearsay statements without any effort to produce Stewart's live testimony. Stewart should be subpoenaed to testify. Inquiry into his intention to testify or again

seek refuge in the privilege against self-incrimination is a necessary predicate to use of his former testimony.

Stewart was deemed unavailable as a witness at the last trial. Stewart's attorney asserted Stewart's privilege against self-incrimination by advising the court of Stewart's intention to do so. At the next trial, Stewart should be the one to invoke constitutional protection. If he seeks to invoke the privilege, the court should conduct a hearing to determine whether a legitimate basis exists to fear incrimination. *Hoffman v. United States*, 341 U.S. 479, 486, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818 (1951).

The passage of time has cured Stewart's most obvious fear in being compelled to testify at defendant's trial. It does not offend the constitution to compel a witness to testify to his own misconduct when the testimony compelled is incapable of incriminating the witness. *People v. Redd*, 135 Ill. 2d 252, 303, 553 N.E.2d 316, 339 (1990). Stewart has been continuously resident in Illinois during the passage of time allowed for the prosecution of a robbery committed in December of 1988. The statute of limitations within which to prosecute Stewart for the Farm Fresh robbery has run. Ill. Rev. Stat. 1991, ch. 38, par. 3—5(b).

A witness can refuse to answer questions only when he has reasonable cause to believe he might be subject to prosecution if he answers. *Redd*, 135 Ill. 2d at 303, 553 N.E.2d at 339 (1990). A witness who cannot be prosecuted for his indiscretions, because prosecution is time-barred, is incapable of bearing witness against himself for such conduct. See *People v. Rockola*, 339 Ill. 474, 171 N.E. 559 (1930).

Stewart's only future prosecutorial concern rests in the State's perception of his honesty. The constitution is not, however, a sanctuary for a witness who harbors intention to furnish false evidence if compelled to testify. See *People v. Cooper*, 202 Ill. App. 3d 336, 559 N.E.2d 942 (1990). Stewart's predicament is no different than the witness who is granted immunity from prosecution from matters about which he is compelled to testify. Such a witness cannot invoke the privilege because he intends to furnish false information. Such a witness also suffers the risk of potential prosecution if his truthful testimony does not grace the prosecution with what it expects to hear.[2]

Stewart may seek protection from self-incrimination by a claim

---

[2]See *United States v. McDougal*, 97 F.3d 1090, 1093-94 (8th Cir. October 9, 1996) (holding that Susan H. McDougal, who had been granted use immunity, could not invoke the privilege against self-incrimination when called to testify before a grand jury based upon her fear that the prosecutor might

that the truth would require disavowal of his earlier sworn testimony. The inconsistent testimony disavowing guilt could subject him to proof of falsity under section 32—2 of the Criminal Code of 1961. 720 ILCS 5/32—2(b) (West 1994). Although the prior testimony under oath would be time-barred perjury, testimony now that he did not commit the crime could be prosecuted with ease of proof. It would be prosecuted, however, only if the prosecution deemed it to be false. Such a prosecution is irreconcilable with the State's perception of the truth. It has persisted in the prosecution of the defendant in the face of Stewart's earlier efforts to claim responsibility for the crime. We can see no realistic reason why the State would pursue Stewart for perjury or obstruction of justice now if he disavowed what the State believes were earlier efforts to commit such crimes. This is particularly true in light of the admissibility of the former testimony, and the loss of the opportunity to cross-examine anew, if Stewart is allowed to invoke the privilege.

For the foregoing reasons, we reaffirm our decision in *People v. Taylor,* 264 Ill. App. 3d 197, 637 N.E.2d 756 (1994). This cause is reversed and remanded for a new trial.

Reversed and remanded.

WELCH and GOLDENHERSH, JJ., concur.

---

disagree with her version of the truth and charge her with perjury).