In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3500

KEVIN RICE,

*Petitioner-Appellant*,

*v.*

TERRY MCCANN, Warden,
Centralia Correctional Center,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3997—**Suzanne B. Conlon**, *Judge*.

ARGUED APRIL 18, 2002—DECIDED AUGUST 6, 2003

Before FLAUM, *Chief Judge*, and HARLINGTON WOOD, JR.,
and POSNER, *Circuit Judges*.

FLAUM, *Chief Judge*. In 1992 Kevin Rice was convicted
in the Circuit Court of Cook County of possession of hero-
in with intent to deliver and sentenced to 20 years' impris-
onment. His state court remedies exhausted, Rice peti-
tioned the federal district court for a writ of habeas
corpus under 28 U.S.C. § 2254. He now appeals the court's
denial of his habeas petition, arguing that he is entitled
to post-conviction relief based on the Illinois Supreme
Court's unreasonable application of *Chambers v. Missis-
sippi*, 410 U.S. 284 (1973), to his case. We affirm.

## I. Background

In 1989 two Chicago police officers, Robert Drozd and Michael Cronin, observed a car with tinted windows drive by their unmarked police car traveling 40 miles-per-hour in a 30 miles-per-hour speed zone. The officers pulled the speeding car over, and Drozd approached the vehicle on the driver's side. Through the car's open window, Officer Drozd saw the driver, petitioner Rice, hand a brown paper bag to the passenger, Raymond Pugh; Drozd then watched Pugh stuff the bag down the front of his pants. Believing the bag to contain a weapon, Drozd ordered Pugh out of the car and conducted a pat-down search. Drozd recovered the bag and found what appeared to be an illegal substance inside (lab tests later showed that the bag contained 103 grams of heroin). Drozd placed Pugh under arrest and told Officer Cronin about the transfer of the bag; Cronin then arrested Rice.

Before Rice and Pugh were tried, Pugh moved to quash his arrest and suppress evidence obtained from Drozd's search. At the suppression hearing, Pugh testified that he had placed the paper bag containing the heroin down his pants two hours before he and Rice were stopped by Officers Drozd and Cronin. Pugh also stated that he had kept the bag in his pants at all times until Drozd discovered it during the pat-down search. At Rice and Pugh's trial, Officer Drozd testified that as he approached the stopped car he saw Rice hand Pugh the paper bag and watched Pugh put the bag down his pants. Rice denied handling the bag or the heroin and called Pugh to testify that he put the bag down his pants two hours earlier. When Pugh asserted his fifth amendment privilege, Rice moved to admit Pugh's statements from the suppression hearing. The trial judge denied the motion, ruling that Pugh's paper bag testimony was inadmissible hearsay because the issues presented at the suppression hearing were

not similar enough to the ones at trial to ensure that the State had a meaningful opportunity to cross-examine Pugh.

The jury ultimately convicted Rice of possession with intent to deliver heroin, and the court sentenced him to a 20-year prison term. Rice appealed his conviction, arguing that the court committed prejudicial error by refusing to admit Pugh's suppression hearing testimony at trial. Rice won an initial victory in the Illinois appellate court, *People v. Rice*, 617 N.E.2d 360, 363-64 (Ill. App. Ct. 1993), but a divided Illinois Supreme Court reinstated his conviction, *People v. Rice*, 651 N.E.2d 1083, 1088 (Ill. 1995).

The Illinois appellate court held that Pugh's statements at the suppression hearing were statements against his penal interest and should have been admitted as an exception to hearsay. *Rice*, 617 N.E.2d at 362. The appellate court examined Pugh's prior statements for indicia of reliability using the framework set forth in *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), and decided that Pugh's testimony satisfied three of the four requirements for admission. *Rice*, 617 N.E.2d at 363 (finding that Pugh's former testimony was (1) corroborated by other evidence, (2) against his penal interests, and (3) subject to cross-examination, but was not (4) made to a close acquaintance shortly after the crime).

The Illinois high court disagreed, holding that the trial court's exclusion of Pugh's former testimony was proper under the state's evidentiary rules and did not deny Rice a fair trial under the rule announced in *Chambers*. *Rice*, 651 N.E.2d at 1087-88. A majority of the Supreme Court of Illinois found that Pugh's statements may have been against his penal interests, but were not made spontaneously to an acquaintance, were not corroborated by any other evidence, and were not subject to adequate cross-examination because the issues at stake in the suppression hearing were limited and the State was not permit-

ted "to fully test the testimony's reliability." *Rice*, 651 N.E.2d at 1087.

Rice timely filed his application for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, tendering six separate grounds for relief. *See Rice v. Bowen*, No. 00 C 3997, 2001 WL 1035262 (N.D. Ill. 2001). The district court rejected all of his reasons and denied his habeas petition. On appeal Rice makes only one argument: that the Illinois Supreme Court unreasonably applied *Chambers*, and violated his constitutional right to due process, in deciding that the trial court had properly excluded Pugh's suppression hearing testimony at Rice's trial.

## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner like Rice whose claim was adjudicated on the merits in state court is not entitled to relief unless he can demonstrate that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Price v. Vincent*, 123 S.Ct. 1848, 1852 (2003). The Supreme Court also warns that under AEDPA we are not at liberty to issue a writ of habeas corpus based on our "independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *Morgan v. Krenke*, 232 F.3d 562, 565-66 (7th Cir. 2000). For our purposes here, that means we must uphold the Illinois Supreme Court's application of *Chambers* (for there is no dispute

that this is the correct governing legal principle) to Rice's case unless it was objectively unreasonable. 28 U.S.C. § 2254(d)(1); *Edmunds v. Deppisch*, 313 F.3d 997, 999 (7th Cir. 2002); *Williams*, 529 U.S. at 404-05. We have said in other habeas proceedings that a state court's application of federal law is reasonable where it is "at least minimally consistent with the facts and circumstances of the case." *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999). *Cf. Williams*, 529 U.S. at 410 (acknowledging that "unreasonable" is difficult to define, but noting that "it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning").

Before we decide the reasonableness of the Illinois Supreme Court's decision in this case, we note that we will not decide whether Pugh's suppression hearing testimony was in fact reliable enough to be admitted into evidence at Rice's trial. Our doing so would usurp the role of the state courts in determining the admissibility of evidence at trial under state law, which we are not permitted to do under AEDPA. *See Krenke*, 232 F.3d at 567. Instead, we may only consider whether it was unreasonable of the Illinois Supreme Court to hold, in light of *Chambers*, that the exclusion of Pugh's suppression hearing testimony did not violate Rice's due process right to present a defense and receive a fair trial. *Krenke*, 232 F.3d at 567.

*Chambers* informs us that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* 410 U.S. at 302. The *Chambers* Court provided four factors to consider in determining whether sufficient indicia of reliability exist to admit exculpatory hearsay into evidence: (1) whether the statement was made shortly after the crime to a close acquaintance, (2) whether other evidence or circumstances corroborate the statement, (3) whether the statement was self-

incriminatory and against the declarant's penal interests, and (4) whether the declarant was subject to adequate cross-examination. *Id.* at 300-01. Rice contends that the Illinois Supreme Court unreasonably applied *Chambers* because Pugh's suppression hearing testimony "bore persuasive assurances of trustworthiness and thus was well within the rationale of the exception for declarations against interest." *Chambers*, 410 U.S. at 302. *See also People v. Rice*, 617 N.E.2d 360, 363 (Ill. App. Ct. 1993) (finding Pugh's prior statement trustworthy as it satisfies three of four *Chambers* factors). The State maintains there was nothing unreasonable about the Illinois Supreme Court's decision: the court identified *Chambers* as the correct governing principle of law, considered Pugh's prior statements in light of the reliability factors identified in *Chambers*, and logically concluded that Pugh's suppression hearing testimony was properly excluded at trial because it was untrustworthy and did not qualify under any hearsay exception. The federal district court considered these conflicting interpretations in reviewing Rice's habeas petition and decided the Illinois Supreme Court's application of *Chambers* was consistent with the facts and circumstances of Rice's case and was therefore not unreasonable. *Rice*, 2001 WL 1035262, at *3.

Our review of the record in this case leads us to conclude that the disagreement among the Illinois state courts concerning the reliability of Pugh's statement, and the necessity for its admission at Rice's trial pursuant to *Chambers*, was reasonable. There is no doubt that Pugh's testimony at the suppression hearing—that he alone had possession of the heroin—is the kind of exculpatory (to Rice) hearsay that *Chambers* held could not be automatically excluded by operation of the rules of evidence. The Illinois courts agreed on two of the four *Chambers* reliability indicators: (1) that Pugh's testimony was not made shortly after the crime to a close acquaintance,

and (2) that the testimony was a statement made against Pugh's penal interests. But the courts disagreed on the remaining two factors: (3) whether corroborating evidence existed to support Pugh's version of events; and (4) whether the state had adequate opportunity to cross-examine Pugh at the suppression hearing. In particular, the Illinois appellate court decided that several facts and circumstances, including Pugh's close relationship with Rice, the voluntariness of his testimony, the lack of inconsistencies in his story compared with other versions of the stop and search, the lack of evidence that Pugh wanted to curry favor with the prosecution, and the fact that Pugh's statements were made under oath and could be used to impeach him at trial, all suggest that Pugh had no motive to fabricate his testimony. But the Illinois Supreme Court looked at the circumstances differently, stating without reference to the appellate court's analysis that there was no evidence corroborating Pugh's statements, and also finding that the prosecution did not have an adequate opportunity to cross-examine Pugh. The high court reasoned that because Pugh's suppression hearing focused on different issues than Rice's trial, the State could not have fully tested Pugh's reliability. Though we may disagree, knowing of no Illinois rule of evidence that restricts exploration of a witness's veracity or motive on cross-examination regardless of the substantive scope of the direct examination, our resolution of this point is neither called for nor permitted on habeas review.

The Illinois courts' dispute over the *Chambers'* factors reveals that reasonable minds can differ as to the proper application of the law to the facts of Rice's case. Ultimately, this is all that we need to recognize and defer to in deciding whether to grant Rice's request for habeas relief. For even if the Illinois Supreme Court's application of *Chambers* was not unassailable, as shown by the contrary inferences drawn by the Illinois appellate court using

the same law and the same facts, by the same logic it also was not unreasonable. *Chambers* instructs courts to avoid mechanically applying evidentiary rules where such application would result in the exclusion of critical evidence and the violation of a criminal defendant's due process rights. We cannot conclude that the Illinois Supreme Court unreasonably applied this principle of law to its analysis of Pugh's excluded hearsay testimony and the impact of the excluded testimony on Rice's constitutional right to a fair trial.

## III. CONCLUSION

The Illinois Supreme Court's decision upholding the trial court's exclusion of certain hearsay testimony from Rice's trial did not involve an unreasonable application of *Chambers v. Mississippi* and therefore does not justify habeas relief in federal court. The district court's denial of Rice's petition for a writ of habeas corpus is AFFIRMED.

POSNER, *Circuit Judge*, dissenting. The U.S. Supreme Court held in *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." With all due respect to the contrary view of my colleagues, it seems me that this is just what the Supreme Court of Illinois did in this case.

A police officer testified that he saw Kevin Rice hand Raymond Pugh a bag later discovered to contain heroin. On the basis of this testimony—and nothing else—Rice was

convicted in an Illinois state court of possession of an illegal drug and sentenced to a long term in prison. At a pretrial hearing on his motion to suppress the evidence consisting of the heroin, Pugh testified that Rice had not handed him the bag; that he had had it on his person for hours. At trial, Rice wanted to call Pugh as a witness; but Pugh, invoking his right not to be compelled to incriminate himself, refused to testify. So Rice sought to introduce in evidence the part of the transcript of the suppression hearing that recorded Pugh's testimony, testimony that if believed would exonerate Rice of the charge of possession. This was refused. The state supreme court's reasons for upholding the refusal were that Pugh's testimony was not corroborated and that the state had not had an opportunity to cross-examine him fully at the suppression hearing. *People v. Rice*, 651 N.E.2d 1083, 1085-88 (Ill. 1995).

When as in this case a person who has evidence to offer is not available to testify, testimony that he gave in another proceeding is admissible if the opposing party, in this case the state, "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" in that proceeding. Fed. R. Evid. 804(b)(1). I am quoting from the Federal Rules of Evidence and they of course do not govern trials in state courts, but the formulation is standard and Illinois law (though common law rather than codified) is essentially the same. See *People v. Rice, supra*, 651 N.E.2d at 1085 ("it is well settled that the testimony of a witness at a prior hearing is admissible in evidence at trial where the witness is unavailable and when ample opportunity to cross-examine existed at the prior hearing"); *People v. Hawkins*, 762 N.E.2d 46, 55 (Ill. App. 2001); *People v. Taylor*, 679 N.E.2d 82, 86-87 (Ill. App. 1997). There is no requirement of corroboration. That is a requirement of another hearsay exception, the one for statements against penal interest,

Fed. R. Evid. 804(b)(3); *People v. McCallister*, 737 N.E.2d 196, 215 (Ill. 2000), which is also applicable to Pugh's testimony at the suppression hearing, see *People v. Rice*, *supra*, 651 N.E.2d at 1086-88, but which is unnecessary to consider, given the prior-testimony exception.

This is one of the solidest exceptions to the hearsay rule, see *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), and a refusal to apply it in a criminal case presents a substantial issue under *Chambers*. The principal justification for the hearsay rule is that most hearsay statements, being made out of court, are not subject to cross-examination. *People v. Robinson*, 679 N.E.2d 1055, 1059-60 (N.Y. 1997). Hearsay statements made in court, albeit in a prior proceeding, do not suffer from that infirmity, provided that, as Rule 804(b)(1) puts it, the opposing party "had an opportunity and similar motive to develop [or challenge—see Advisory Committee Note to Subdivision (b), Exception (1)] the testimony by . . . cross . . . examination." And again Illinois law, as set forth in the state supreme court's decision upholding Rice's conviction, *People v. Rice*, *supra*, 651 N.E.2d at 1085-86, is the same. An auxiliary justification for the hearsay rule, but one whose validity has been strongly challenged, see Michael J. Saks, "Enhancing and Restraining Accuracy in Adjudication," 51 *L. & Contemp. Probs.*, Autumn 1988, pp. 243, 263-64, is that the trier of fact cannot observe the demeanor of the absent declarant.

Had Pugh's testimony at the suppression hearing been believed, the motion to suppress the drug evidence would have been granted. The only evidence of probable cause to seize the drugs was the testimony of the police officer who claimed to have seen Pugh hand them to Rice, and his testimony would have been totally discredited had Pugh been believed. So the state had every incentive to cross-examine Pugh about his relation with Rice and any other circumstance that might make him less credible. And not only the incentive, but the right. As remarked

in *People v. Rice*, under Illinois law cross-examination even at a preliminary hearing to determine probable cause for a search or seizure is not limited to the scope of the direct examination but includes "such further interrogation as necessary to show interest, bias, prejudice, or motive of the witness, to the extent that these factors are relevant to the question of probable cause." 651 N.E.2d at 1085. The Illinois supreme court's determination that because the suppression hearing focused on different issues from the trial the state didn't have the incentive or opportunity to test Pugh's reliability fully is, with all due respect, nonsense. The issues were different—probable cause to seize the drugs versus Rice's possession of them—but the incentive to destroy Pugh's credibility the same as it would have been had he testified at trial. If he were believed, the drugs should not have been seized *and* Rice was not guilty of possessing them.

It is not as if the Illinois court had found that the prosecutor at the suppression hearing in fact lacked an incentive to cross-examine Pugh fully. Rather, the court *automatically* equated a difference in issues to a difference in incentives to cross-examine. Here is the key passage in the opinion: "[T]he question presented at codefendant's suppression hearing dealt with whether Officer Drozd saw codefendant [i.e., Pugh] tuck a brown paper bag into his pants after defendant's car was stopped, giving the officer probable cause to search codefendant. The focus of the cross-examination of codefendant at the suppression hearing therefore was the conduct of codefendant just prior to the search, his self-interest in testifying falsely at the suppression hearing, and the issues presented by the motion to suppress. At trial however, the State's focus would be on the guilt or innocence of defendant—a much different issue than that presented at the suppression hearing—and any motive codefendant might have in making exculpatory statements on behalf of defendant." *Id.*

at 1086. The issues were different from a legal standpoint, but they were not different so far as the relevance of Pugh's testimony was concerned. Any motive he might have had for trying to exculpate Rice would, by undermining that testimony, strengthen the state's case that Rice gave Pugh the heroin and *therefore* was guilty of illegal possession.

The court based the exclusion of reliable evidence essential to give a criminal defendant a crack at acquittal on an irrational ground, the "different issues" ground that as I have just explained was irrelevant to the pertinence and reliability of Pugh's evidence. Because the state supreme court's application of *Chambers* was unreasonable and the error not a harmless one, as in the otherwise rather similar case of *People v. Hawthorne*, 841 P.2d 118, 125-28 (Cal. 1992), Rice is entitled to a new trial.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
