┌─────────────────────────────────────────────┐
│          **NONPRECEDENTIAL DISPOSITION**          │
│  To be cited only in accordance with Fed. R. App. P. 32.1  │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 3, 2008
Decided August 5, 2009

**Before**

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 07-2023 | |
| | Appeal from the |
| HARDILL BOWIE, | United States District Court for the |
| *Petitioner-Appellant*, | Eastern District of Wisconsin. |
| | |
| *v.* | No. 06 C 640 |
| | |
| MICHAEL THURMER, | **J. P. Stadtmueller**, |
| *Respondent-Appellee*. | *Judge*. |

## O R D E R

Hardill Bowie was convicted of armed robbery in a Wisconsin state court and sentenced to ten years' imprisonment.  Bowie appealed his conviction on the ground that his trial counsel was ineffective.  The Wisconsin Court of Appeals, applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), denied his claim and affirmed the conviction.  The Wisconsin Supreme Court denied Bowie's petition for review.  Bowie then filed a petition for a writ of habeas corpus in the district court renewing his ineffective-assistance-of-counsel claim.  The district court analyzed the claim under the standard of review prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), and held that the Wisconsin Court of Appeals did not unreasonably

apply *Strickland.*  We agree and affirm.

AEDPA requires Bowie to establish that the Wisconsin Court of Appeals' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Bowie argues only that the state court's decision was an "unreasonable application" of *Strickland*.  Under *Strickland*, a defendant must establish that his trial counsel performed below minimal professional standards and that the deficient performance prejudiced him.  466 U.S. at 687.  Prejudice under *Strickland* means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  For purposes of habeas review, a "state court decision must be more than incorrect from the point of view of the federal court."  *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).  Rather, the state court's decision must "lie well outside the boundaries of permissible differences of opinion."  *Id*.

Bowie first challenges the Wisconsin Court of Appeals' treatment of his attorney's failure to object to the State's evidence that Bowie had acquired a handgun after the robbery and that he kept it in his dorm room.  The state appellate court concluded that counsel's failure to object did not amount to ineffective assistance under *Strickland* because the evidence was admissible under Wisconsin law.  The court explained that the evidence was admissible to rehabilitate the credibility of Tiffany Peters, Bowie's former girlfriend who claimed to be his accomplice in the robbery and who had testified that Bowie committed the robbery with a toy gun.  Bowie's counsel had impeached Peters by pointing out inconsistences between her prior statements to police and her trial testimony regarding the physical appearance of the toy gun.  Defense counsel's overall strategy was to portray Peters as a scorned lover who fabricated her account of the robbery to seek revenge.  The prosecutor responded on redirect by asking Peters about her knowledge of Bowie's later possession of a real gun; he later introduced the gun, which was found in a search of Bowie's apartment.  The Wisconsin Court of Appeals explained that:

> Peters testified that she knew Bowie possessed a real gun and that he acquired it after the robbery.  The prosecutor appropriately argued that, if she were merely trying to get Bowie in trouble, she would not have corrected the police impression that he used a real gun.  The added detail that he used a toy gun, even though Peters knew he possessed a real gun, enhances her credibility.

Given the probative value of this evidence in rehabilitating Peters' account of the robbery, the state appellate court held that the gun evidence was not impermissible "other acts" evidence under Wisconsin law.

Bowie essentially argues that the state appellate court erred in holding that the

evidence was admissible and nonprejudicial. But on habeas review federal courts do not second-guess state courts on matters of state law. *See Waddington v. Sarausad*, 129 S. Ct. 823, 832 (2009) ("The Washington Supreme Court expressly held that the jury instruction correctly set forth state law, . . . and we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991))); *Huusko v. Jenkins*, 556 F.3d 633, 637 (7th 2009) ("For a federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law."); *Rice v. McCann*, 339 F.3d 546, 549 (7th Cir. 2003) ("[W]e note that we will not decide whether [the passenger's] suppression hearing testimony was in fact reliable enough to be admitted into evidence at Rice's trial. Our doing so would usurp the role of the state courts in determining the admissibility of evidence at trial under state law . . . ."). We see no reason to entertain Bowie's argument that the Wisconsin Court of Appeals misapplied state evidence law.[1]

Bowie next challenges the state appellate court's evaluation of his counsel's failure to ask for a limiting instruction in response to a brief, improper remark made by the prosecutor during closing argument. The prosecutor asked the jury to consider this question: "Why does this college student have a loaded .357 in his dorm room?" He then continued with a long argument explaining why Peters' knowledge of Bowie's possession of a real handgun at the time she reported the crime to police should bolster the credibility of her statements to law enforcement as well as her subsequent testimony that Bowie committed the crime with a toy gun. The state appellate court acknowledged that the prosecutor's question was improper but agreed with the state trial judge that counsel's failure to request a limiting instruction was a reasonable trial strategy. In any event, the court held, counsel's failure to request a limiting instruction in response to this "single

---

[1] We have granted habeas relief on state-law evidentiary questions in very rare cases where the state court's resolution of the evidentiary dispute was clearly unreasonable. *See Martin v. Grosshans*, 424 F.3d 588, 591 (7th Cir. 2005) (granting habeas for ineffective assistance of counsel where state appellate court's determination of relevance and prejudice was clearly unreasonable). Were we inclined to consider the issue here, we would reject Bowie's various arguments on the admissibility of this evidence. For example, Bowie wrongly asserts that Wisconsin evidence law prohibits the introduction of "other acts" evidence for the purpose of rehabilitating witnesses. At least one published decision of the court of appeals holds that the State can introduce "other acts" evidence to show witness bias, *see State v. Schroedl*, 647 N.W.2d 467 (Wis. Ct. App. 2002); using "other acts" evidence to rehabilitate a witness is akin to using "other acts" evidence to show the witness is biased. Moreover, Wisconsin's "other acts" evidence rule is very similar to Rule 404(b) of the *Federal Rules of Evidence*, and this court has held that Rule 404(b) permits introduction of "other acts" evidence to rehabilitate a witness testifying against the defendant. *See, e.g., United States v. Holly*, 167 F.3d 393, 395 (7th Cir. 1999). We also decline Bowie's invitation to second-guess the state court's weighing of the probative value of the evidence against the danger of unfair prejudice.

sentence" did not undermine confidence in the trial's outcome.

We need not address the state court's conclusion that counsel's failure to request a limiting instruction was a reasonable strategic decision (though it certainly appears to be); the court's conclusion on prejudice was objectively reasonable. We review the state appellate court's application of the *Strickland* standard of prejudice in light of the context in which the prosecutor's statement was made and also within the context of the trial as a whole. The prosecutor's comment was exceedingly brief and was, as we have noted, part of a long colloquy discussing how Peters' knowledge of Bowie's possession of a real gun bolstered her credibility, which was a permissible line of argument. When viewed within the context of the entire trial, the prosecutor's passing reference does not undermine confidence in the outcome of the proceedings; more pertinent under AEDPA's standard of review, the state court reasonably concluded that counsel's failure to request a limiting instruction was not prejudicial.

Bowie also argues that the Wisconsin Court of Appeals unreasonably applied *Strickland* when it concluded that he was not prejudiced by his counsel's failure to impeach Peters with evidence of her prior misdemeanor conviction for theft under false pretenses. The state court reasoned that other evidence in the record raised sufficient questions about Peters' credibility that the incremental impeachment value of her prior conviction was not enough to undermine confidence in the outcome. This is not an unreasonable application of *Strickland*.

Were we reviewing the claim of prejudice based on a failure to impeach a witness on direct review, we would consider three factors: the value of the omitted impeaching evidence, the effectiveness of the defense absent that evidence, and the strength of the government's case. *See, e.g., Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002). Here, the impeachment value of Peters' single misdemeanor conviction is not as great as Bowie contends. To be sure, Wisconsin law observes that "'one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted.'" *State v. Kuntz*, 160 Wis. 2d 722, 752 (Wis. 1991) (quoting *Nicholas v. State*, 49 Wis. 2d 683, 688 (Wis. 1971)). But the strength of this evidence is tempered by the limit Wisconsin places on its use; counsel would have been limited on cross-examination to "ask[ing] the witness if he has ever been convicted of a crime and if so how many times," and "[i]f the witness's answers are truthful and accurate, then no further inquiry may be made." *Id*. (internal citations omitted). Here, Bowie's counsel amply impeached Peters with other evidence—chiefly, the discrepancies between her trial testimony and her statements to the police—and the government's evidence regarding Bowie's role in the robbery was otherwise very strong.

This is not a case in which the defense offered little or no other evidence raising doubts about the witness's credibility such that the failure to use the prior conviction for

impeachment might have played a larger role.  Bowie's counsel consistently drew out evidence portraying Peters as a revenge-seeking, jilted ex-girlfriend, and he highlighted the inconsistencies between her trial testimony and her initial statements regarding the toy gun.  The state appellate court also noted that Peters' admitted role in the robbery informed the jury that she was an individual with a criminal history—a fact that is itself probative of her truthfulness.  Furthermore, eyewitnesses corroborated much of Peters' testimony.  Under these circumstances, the state appellate court reasonably concluded that the additional impeachment value of her prior misdemeanor conviction was not enough to undermine confidence in the trial's outcome.

Bowie also challenges the state appellate court's rejection of his claim that his counsel was ineffective because he failed to ask the trial judge to strike the entire jury panel after a comment by a potential juror who worked as a correctional officer at the local jail.  In response to a voir dire question regarding his ability to remain fair and impartial, the prospective juror said: "May have served—I don't know if I served [Bowie] breakfast, but I'm around him all the time, around the inmates, and you hear all the different stories."  The trial judge immediately stopped the juror, and Bowie's counsel moved to strike him for cause.  The court granted the motion.  Bowie's attorney later discussed with the court his concern that this statement left an impression with potential jurors that Bowie was incarcerated, but the court suggested that the statement was probably not clear enough to create that inference.  Counsel then discussed the issue with Bowie and ultimately decided not to request a curative instruction because it would only highlight the matter.

The Wisconsin Court of Appeals did not specifically address the question of whether counsel's failure to move to strike the entire jury panel was deficient representation; the court held instead that the omission was not prejudicial.  Bowie argues that the juror's comment created an unreasonable risk that the jury would be unable to apply the presumption of innocence.  He maintains that the juror's statement that he hears "all the different stories" implied that the juror had reason to believe that Bowie was a bad person and that the statement in general implied that Bowie was incarcerated.  He claims that this undermined the jury's ability to apply the presumption of innocence and required a finding of prejudice.

Bowie's claim relies on *Estelle v. Williams*, 425 U.S. 501, 504 (1976), which held that a state violates a defendant's due-process rights when it compels him to wear prison garb before the jury because that clothing is a "continuing influence" that creates an unacceptable risk to the presumption of innocence.  *Estelle* is inapposite.  *Estelle* holds that a defendant's right to due process is violated only when the state *compels* him to appear in prison garb.  *See id*. at 512-13.  There is no issue of compulsion here.  The *potential* influence of the prospective juror's stray comment on the ability of the rest of the jurors to apply the presumption of innocence is not similar to the *continuing* influence of a defendant

appearing in prison garb throughout the duration of his trial.

Even if we assumed Bowie's counsel's failure to move to strike the entire jury panel amounted to deficient performance, *Estelle* would not excuse Bowie from establishing that the state court's evaluation of prejudice under *Strickland* was unreasonable. He has failed to do so. The juror's comments were exceedingly brief and somewhat ambiguous. Although the juror was responding to a question about his fairness and impartiality, his comment that he hears "all the different stories" was facially neutral. It is also noteworthy that the court immediately silenced the juror after he made that statement. As to the inference that Bowie had been or was incarcerated, we note that Bowie raised this inference himself by testifying about his prior convictions. And even if Bowie had not raised that inference himself, jurors in a felony robbery case "are likely to presume that a criminal defendant, irrespective of his or her guilt or innocence, has spent at least some time in custody as a result of being charged with a crime." *Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004). On these facts it was hardly unreasonable for the state court to conclude that Bowie was not prejudiced by his counsel's failure to move to strike the entire jury panel.

Finally, Bowie asks us to consider the alleged errors by trial counsel together and determine whether their cumulative effect sufficiently undermines confidence in the outcome of his trial. It does not appear that the Wisconsin Court of Appeals considered the cumulative effect of counsel's alleged errors. When the state court does not decide an issue raised in a habeas petition, AEDPA's deferential standard of review does not apply. We must therefore evaluate Bowie's position directly under *Strickland,* and in doing so, we reject his claim for habeas relief. For the reasons we have already explained, the alleged errors of counsel were so minor that, even taken together, they do not raise a reasonable probability that the outcome of Bowie's trial would have been any different.

**AFFIRMED**.